IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BARRY BAYS, | § | |
| #13101-027, | § | |
| MOVANT, | § | |
| | § | |
| V. | § | CASE NO. 3:22-CV-615-B-BK |
| | § | (CRIMINAL NO. 3:13-CR-357-B-1) |
| UNITED STATES OF AMERICA, | § | |
| RESPONDENT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this civil action was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition on the *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 filed by Movant Barry Bays. As detailed herein, the motion should be **DENIED**.

## I. BACKGROUND

### A. Offense Conduct and Charges

Bays founded Little Arm, Inc., (d/b/a B&B Distribution), a manufacturing and distribution facility for synthetic cannabinoid products. Crim. Doc. 445-1 at ¶ 25.[1] Bays produced his own brands of synthetic marijuana and distributed them to smoke shops and convenience stores throughout the country. Crim. Doc. 445-1 at ¶ 25. Bays' products were labeled as "incense," "potpourri," "air freshener," "aromatherapy," and "not for human

---

[1] Citations to documents from Bays' criminal proceeding, *United States v. Bays*, 3:13-CR-357-B, are preceded with "Crim. Doc." Citations to documents from this Section 2255 proceeding are preceded with "Doc."

consumption," but Bays' products were intended for human consumption. Crim. Doc. 445-1 at ¶ 26. Bays marketed his products as compliant with DEA and state regulations, and every shipment contained a "Letter of Affirmation" in which Bays declared that the products were free of chemicals under the Controlled Substance Act and were also free of controlled substance analogues. Crim. Doc. 445-1 at ¶ 27. Between June 2011 and August 2013, B&B sold over $7 million in synthetic cannabinoid products. Crim. Doc. 445-1 at ¶ 61.

Based on that conduct, Bays was arrested and charged in a fourth superseding indictment with: (1) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; (2) conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349, as defined in 18 U.S.C. § 1341; (3) conspiracy to distribute a controlled substance analogue, in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(C); (4) possession of a firearm in furtherance of a drug crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (5) using a communication facility to facilitate a drug felony, in violation of 21 U.S.C. § 843(b). Crim. Doc. 445-1 at ¶ 12. On October 27, 2014, a jury convicted Bays on all counts. Crim. Doc. 445-1 at ¶ 14. Bays' advisory guideline range was life, capped at the combined statutory maximum terms for the offenses of conviction at 588 months. Crim. Doc. 445-1 at ¶ 130. In April 2015, the Court sentenced Bays to an aggregate sentence of 425 months' imprisonment. Crim. Doc. 488.

### B. Bay's First Appeal and Resentencing

Bays filed a direct appeal. While Bays' case was on appeal, the Supreme Court decided *McFadden v. United States*, 576 U.S. 186 (2015), a controlled substance analogue distribution case that rendered the jury instructions in Bays' trial erroneous because they did not instruct the jury to find beyond a reasonable doubt that Bays knew that the products at issue were controlled substance analogues. In February 2017, the Court of Appeals for the Fifth Circuit affirmed

Bays' convictions on Counts 1 and 2, but reversed his convictions on Counts 3, 4, and 5 due to the intervening *McFadden* decision. *See United States v. Bays*, 680 F. App'x 303 (5th Cir. 2017) (per curiam).

On remand, the Court granted the Government's motion to dismiss Counts 3, 4, and 5, and resentenced Bays as to Counts 1 and 2. Crim. Doc. 608 at 55-56, 155. The parties disputed whether there was actual or intended loss under USSG § 2B1.1, which provides for offense-level increases for fraud offenses based on the loss amount. Crim. Doc. 608 at 11-14. The parties also disagreed about whether the Court could consider that the products at issue were controlled substance analogues in determining the loss amount, even though Bays had not been properly convicted of the controlled substance charges. Crim. Doc. 608 at 24-30. The Court ultimately determined the involvement of controlled substances could be considered as a guidelines sentencing factor by a preponderance of the evidence. Crim. Doc. 608 at 28, 30. Based on the Section 3553 factors—particularly Bays' leadership role, his lack of remorse, the dangerous nature of the drugs sold, his disturbing criminal record, and the need to deter similar conduct— the Court varied upwards, imposing consecutive sentences of 60 months on Count One and 240 months on Count Two, for an aggregate imprisonment term of 300 months. Crim. Doc. 608 at 143-45.

### C. Bay's Second Appeal and Resentencing

Bays again filed a direct appeal. The Fifth Circuit found that the Court erred in applying a 20-level increase based on loss amount because it failed to make "an explicit primary finding" that either fraud offense "in fact resulted in an actual loss, or, alternatively, that there was an intended loss to one or both offenses, as defined by application note 3(A)," and remanded the

case accordingly.  *See United States v. Bays*, 765 F. App'x 945, 952-53, 956 (5th Cir. 2019) (per curiam).

Following the second remand, the probation officer issued a Fifth Addendum to the PSR. Crim. Doc. 635-1.  The Fifth Addendum maintained that "there was an actual loss that resulted from the defendant's offenses of conviction."  Crim. Doc. 635-1 at 1.  Specifically, B&B's products were sold to customers with materially false labeling of "incense," "potpourri," "air freshener," or "aroma therapy," and "not for human consumption," when, in fact, B&B's products were intended for human consumption.  Crim. Doc. 635-1 at 2.  Additionally, Bays defrauded customers by including the false "Letter of Affirmation" in every shipment, which misled customers into believing that the products were legal.  Crim. Doc. 635-1 at 2.

However, the Fifth Addendum also included an alternative guidelines analysis, citing the Fifth Circuit's decision in *United States v. Stanford*, 883 F.3d 500 (5th Cir. 2018).  Crim. Doc. 635-1 at 2.  The Fifth Addendum grouped counts 1 and 2 together and began with the conspiracy to defraud the United States, USSG § 2X1.1, as the more serious count.  Crim. Doc. 635-1 at ¶ 73; *see also* USSG §§ 3D1.2, 3D1.3(a).  Next, because the conspiracy charged an underlying violation of 21 U.S.C. §§ 331 and 333(a)(2), the Fifth Addendum moved to USSG § 2N2.1. Crim. Doc. 635-1 at ¶ 75.  Under Section 2N2.1(c)(2), if the offense was committed in furtherance of, or to conceal, an offense covered by another offense guideline, the guideline for that second offense is applied.  Crim. Doc. 635-1 at ¶ 75.  The Fifth Addendum provided that, "[i]n this case, the introduction of misbranded synthetic cannabinoid products was done in furtherance and to conceal the distribution and sale of such."  Crim. Doc. 635-1 at ¶ 75.  The Fifth Addendum further found that, because the misbranding offense was committed in furtherance of the distribution of a controlled substance, the drug trafficking guidelines of USSG

§ 2D1.1 applied, resulting in an advisory guideline range of life, limited to the statutory maximum of 300 months. Crim. Doc. 635-1 at ¶ 75, 130.

Bays objected to the Fifth Addendum, and the probation officer issued a Sixth Addendum that incorporated evidence of loss cited by the Government, explained that the Letters of Affirmation were used to further B&B product sales by furthering the claims of legality of the products, and citing evidence that Bays "lied to customers 'all the time' and provided inaccurate information about what was in the product and shipped it anyway because the defendants did not want to throw away the product and lose money." Crim. Doc. 643-1 at 2. The Sixth Addendum provided further that "but for the affirmation letters and fraudulent representations, the customers may have not purchased the products at issue, and [] the defendant intended for the customers to continue to purchase the products in order for the defendant to reap the profits." Crim. Doc. 643-1 at 2.

The Sixth Addendum also repeated the alternative analysis under Section 2N2.1's cross reference, maintaining that "[t]he evidence available reveals, to a preponderance of the evidence standard, the defendant was involved in the distribution of controlled substance analogues." Crim. Doc. 643-1 at 2. It indicated that the conclusion was based on investigative materials provided by the DEA, summaries of evidence presented at trial, and interviews with case agents. Crim. Doc. 643-1 at 2-3. The Sixth Addendum also explained that a controlled substance analogue "is a controlled substance for purposes of the guideline applications." Crim. Doc. 643-1 at 3.

At the second resentencing hearing, the Court first found that an actual loss occurred, that is, "a reasonably foreseeable pecuniary harm to result from the offense." Crim. Doc. 668 at 58-59. It also noted that, "the defendants intended pecuniary harm from their conspiracy to defraud

the government or conspiracy to commit mail fraud and that either offense resulted in actual loss here." Crim. Doc. 668 at 59.

The Court also found that the use of Section 2N2.1's cross reference to Section 2D1.1 was proper. Crim. Doc. 668 at 64. It determined that the substances Bays trafficked were controlled substances and that Bays knew that the substances were controlled substances or analogues of the same. Crim. Doc. 668 at 69, 71-72. The Court then adopted the PSR and all addenda, and calculated the guideline ranges for both the Section 2B1.1 and the alternative Section 2N2.1/2D1.1 sentences. Crim. Doc. 668 at 81-85. Finally, the Court noted that it considered the Section 3553 factors, specifically referencing Bays criminal history, the widespread nature of the offense, the dangerousness of the substances involved, Bays' lack of remorse, and deterrence. Crim. Doc. 668 at 88-90. The Court explained that it would have imposed the same sentence under the Section 3553 factors even if the guideline calculations were incorrect. Crim. Doc. 668 at 92.

**D. Bay's Third Appeal and the Instant Section 2255 Motion**

Once again, Bays filed a direct appeal. Like his trial counsel, his appellate counsel argued that there was no loss and that the Court could not consider controlled substances under Section 2B1.1 because a jury had not found Bays guilty of trafficking the same. *United States v. Bays*, 846 F. App'x 285, No. 20-10196 (5th Cir. 2021) (per curiam). But Bays' appellate counsel did not contest the alternative guideline analysis under Section 2N2.1, nor did she argue against the Court's second alternative, upward variance based on the Section 3553 factors. *See* Appellant's Brief, *United States v. Bays*, 846 F. App'x 285, No. 20-10196 (5th Cir. 2021) (per curiam).

The Fifth Circuit found that it need not consider the Section 2B1.1 calculation because: (1) the sentence could be affirmed on the alternative calculation based on Section 2N2.1 (which Bays failed to brief and therefore conceded), and (2) even if there was error, it was harmless since the Court stated that, alternatively, it would have imposed the same sentence based on the Section 3553 factors. *Id.* at 286-87.

Bays subsequently filed the instant 28 U.S.C. §2255 motion. Doc. 1, Doc. 12. The Government has responded. Doc. 23. Bays has filed a reply. Doc. 26.

Bays raises these claims for relief:

1.  His appellate counsel was ineffective for not challenging his sentence under Section 2N2.1's cross-reference;

2.  His appellate counsel was ineffective for not challenging the Court's reliance on the Section 3553 sentencing factors;

3.  Count One of the indictment was duplicitous, in violation of the Sixth Amendment;

4.  His right to present a complete defense was hampered because the *McFadden* "mens rea" instruction was omitted from his jury trial; and

5.  His sentence was excessive and unreasonable.

Doc. 12 at 7-18.

## II. ANALYSIS

After conviction and exhaustion or waiver of the right to direct appeal, the court presumes that a petitioner stands fairly and finally convicted. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc)). Under 28 U.S.C. § 2255, a petitioner can collaterally challenge his conviction if: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence

exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).  Section 2255, is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

### A. Ineffective Assistance of Counsel

Bays claims that his appellate counsel was ineffective.  Doc. 12 at 7-10, 19-20.  To establish ineffective assistance of counsel, a movant must demonstrate counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).  Failure to establish either deficient performance or prejudice defeats the claim.  *Id.* at 697.

To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id*. at 687.  The proper measure of attorney performance is reasonableness under prevailing professional norms.  *Id.* at 688.  That said, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.*

*Strickland's* two-pronged approach to determining ineffective assistance of counsel claims also applies to claims against appellate counsel.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).  "Where, as here, appellate counsel presented, briefed, and argued one or more nonfrivolous grounds for relief on direct appeal and did not seek to withdraw his representation, the petitioner must satisfy *both* prongs of the *Strickland* test in connection with his IAC claim against appellate counsel."  *Wells v. Lumpkin*, Civil Action No. 4:21-CV-01384-O, 2023 WL

7224191, at *23 (N.D. Tex. Nov. 2, 2023) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 482 (2000); *Smith*, 528 U.S. at 287-89).  "Appellate counsel need not and should not raise every nonfrivolous claim or argument in merits briefing on appeal." *Id.* (citations omitted).  Instead, appellate counsel should select from among them to maximize the likelihood of success on appeal.  *Id.* (citing *Davila v. Davis*, 582 U.S. 521, 533 (2017); *Smith v. Murray*, 477 U.S. 527, 536 (1986)).  "Appellate counsel's decision not to raise a claim or argument on direct appeal, therefore, does not give rise to a deficient performance unless that claim or argument was plainly stronger than those actually presented to the appellate court." *Id.* (citing *Davila*, 582 U.S. at 533); *Smith*, 528 U.S. at 288).

Further, "where the ineffective assistance is based on counsel's failure to raise an issue, the movant must show, 'that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue[,]' and then 'that the attorney's deficient performance led to a fundamentally unfair and unreliable result.'" *Pena-Sanchez v. United States*, Civil Action No. 7:20-CV-0126, 2021 WL 11549914, at *7 (S.D. Tex. Mar. 1, 2021), *rec. accepted* 2021 WL 11549915 (S.D. Tex. Apr. 7, 2021) (citing *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001)).  A "reasonable probability" means "a probability sufficient to undermine confident in the outcome." *Strickland*, 466 U.S. at 694.  This "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).  Accordingly, a reviewing court "must counter-factually determine the probable outcome on appeal had counsel raised the argument.'" *United States v. Reinhart*, 357 F.3d 521, 530 (5th Cir. 2004) (quoting *United States v. Phillips*, 210 F.3d 345, 350 (5th Cir. 2000)).

**1. Failure to Challenge Application of Section 2N1.1(c)(2) on Appeal**

Bays claims that appellate counsel was ineffective for failing to assign as error this

Court's application of Section 2N2.1's cross-reference as was objected to by trial counsel.  Bays

fails to show that his appellate counsel was ineffective or how he was prejudiced if she was.

A recap of how the Court reasoned the applicability Section 2N2.1's cross-reference in

calculating the guideline range is helpful:

- Counts 1 and 2—conspiracy to defraud the United States and conspiracy to commit mail fraud—were grouped together.  The Court then moved to the guideline for the count resulting in the highest offense level, which was conspiracy to defraud the United States in violation of 18 U.S.C. § 371, as defined in 21 U.S.C. §§ 331 and 333(a)(2), i.e., the misbranding offense.  *See United States v. Dickson*, 632 F.3d 186, 191 (5th Cir. 2011) (where counts are grouped together pursuant to Section 3D1.2(a)-(c), "the offense that produces the highest total offense level, not the highest base offense level, sets the level for the group").

- The guideline for 18 U.S.C. § 371 is found in USSG § 2X1.1, which states that the base level is determined by the base offense level from the guideline for the substantive offense, along with any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.  USSG § 2X1.1(a).  The underlying offense is a violation of 21 U.S.C. §§ 331, 333(a)(2), the guideline for which is found at USSG § 2N2.1.

- Section 2N2.1 in turn contains a cross-reference provision that if the "offense was committed in furtherance of, or to conceal, an offense covered by another guideline," then the guideline for the underlying offense should apply.  *See* USSG § 2N2.1.

- The Fifth Addendum explained that "the introduction of misbranded synthetic cannabinoid products was done in furtherance and to conceal the distribution and sale of such."  Crim. Doc. 635-1 at ¶ 75.  Because "the offense was committed in furtherance of the distribution of a controlled substance (a violation of 21 U.S.C. § 841(a)(1)), the guidelines for that offense, under USSG § 2D1.1 are applied."  Crim. Doc. 635-1 at ¶ 75.

Bays' sentencing counsel argued that Bays' involvement in the distribution of allegedly

controlled substance analogues could not be considered in applying the cross-reference because

he had not been convicted of it; indeed, the jury had never actually found that the substances were controlled substance analogues.  Crim. Doc. 668 at 9, 15,16, 22.  A contrary result, according to Bays' sentencing counsel, would violate Bays' due process rights and Supreme Court precedent.  Crim. Doc. 668 at 21-22.

The Court rejected those arguments and found, by a preponderance of the evidence, that (1) controlled substance analogues were part of the misbranding offense, (2) those analogues met the definition of controlled substances under the guidelines, (3) Bays knew that he was distributing controlled substance analogues, and (4) his misbranding was in furtherance of the distribution of those controlled substances.  Crim. Doc. 668 at 64, 69-72, 81-85.  Therefore, Section 2N2.1's cross-reference was properly applied.

As pertinent here, Bays faults his appellate counsel for failing to raise the same arguments as his sentencing counsel on appeal.  However, Bays has not demonstrated that those arguments have merit, much less a reasonable probability that the Fifth Circuit would have reversed his sentence if his appellate counsel had made them.

To start, the Fifth Circuit affirmed the use of Section 2N2.1's cross-reference under similar facts in *United States v. Stanford*, 883 F.3d 500 (5th Cir. 2018).  There, the defendant was involved in a conspiracy to distribute a synthetic cannabinoid and was later convicted by a jury of conspiracy to distribute a controlled substance analogue, conspiracy to introduce misbranded drugs into interstate commerce, and conspiracy to launder money.  *Id.* at 503.  As with Bays, the Fifth Circuit reversed the conspiracy to distribute a controlled substance analogue conviction following *McFadden* but affirmed the other convictions.  *Id.* at 504.  On remand, the district court imposed the same sentence, using Section 2N2.1 as the applicable guideline and applying its cross-reference because the misbranding was in furtherance of a controlled

substance analogue drug conspiracy.  *Id.* at 505, 511.  The defendant argued on appeal that the

district court erred in applying Section 2N2.1's cross-reference because "offense," as used in that

guideline, requires two offenses of conviction, a requirement that the drug conspiracy conviction

could no longer satisfy.  *Id.* at 511.

      The Fifth Circuit rejected that argument under the plain-error standard of review.

"Extrapolating" from reasoning provided in non-binding precedent that considered similar

issues, the Court held that:

> the predicate for application of U.S.S.G. § 2N2.1 is not necessarily another offense
> of conviction.  Rather, it is sufficient that the offense for which the defendant is
> convicted—i.e., "the offense"—was committed "in furtherance of, or to conceal"
> another offense regardless of whether there is a jury conviction on the other offense.
> These interpretations of the Guidelines comport with the context that the decision
> of a cross reference, unless explicitly instructed otherwise, is made on the basis of
> relevant conduct principles.

*Id.* at 513-14.

      The Fifth Circuit's determination in *Stanford* that it was not plain error to rely on the

cross-reference under similar facts impedes Bays' ability to show ineffectiveness because the no-

plain-error-determination implies that Bays' legal position is either wrong or not clearly

established.  *See United States v. Bishop*, 603 F.3d 279, 281 n.5 (5th Cir. 2010) ("An error is not

plain 'unless the error is clear under current law'… [particularly where] [t]here are no published

decisions in this Circuit that address [the issue].").  Either way, Bays cannot show that his

counsel was ineffective for not challenging this Court's use of Section 2N2.1.  *See, e.g., Jones v.

Davis*, 673 F. App'x 369, 375 n. 54 (5th Cir. 2016) (per curiam) ("Counsel's failure to anticipate

a rule of law that has yet to be articulated by the governing courts, and failure to raise a novel

argument based on admittedly unsettled legal questions does not render his performance

constitutionally ineffective.") (quoting *Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014)).

Similarly, as to prejudice, the Fifth Circuit's refusal to find that it was plain error for the district court to employ the cross-reference in *Stanford* precludes Bays from showing a "substantial likelihood" of a different result in his own appeal had his appellate counsel challenged application of Section 2N2.1's cross-reference. The *Stanford* holding suggests that the Fifth Circuit would have rejected the argument under any standard.

Bays tries to distinguish *Stanford* by claiming that, although it also involved a conspiracy to defraud the United States, the overt acts of conspiracy were different. Doc. 26 at 5. Bays fails to explain why that matters though, and it is not evident to the Court.

Bays also notes that, in *Stanford*, the district court originally submitted an interrogatory to the jury asking whether it found that the defendant knew that the products were controlled substance analogues, and the jury answered in the affirmative. Doc. 26 at 5. According to Bays, this shows that the *Stanford* court did not sentence the defendant based on unadjudicated conduct, as this Court did him. Doc. 26 at 5. That inference is unsupported, however, as the Fifth Circuit found that the special interrogatory did not save the otherwise improper jury instructions. *See United States v. Stanford*, 823 F.3d 814, 829, 834 (5th Cir. 2016). At bottom, in neither *Stanford* nor this case did a jury properly determine that the defendant conspired to traffic controlled substance analogues.

Next, Bays argues that recent Supreme Court jurisprudence is incompatible with *Stanford*. He cites *United States v. Haymond*, 588 U.S. ---, 139 S. Ct. 2369 (2019) (plurality opinion) and *United States v. Davis*, 588 U.S. ---, 139 S. Ct. 2319 (2019). Neither decision is on point, however.

In *Haymond*, the Court ruled that a statute violated a defendant's Sixth Amendment right to trial by jury and Fifth Amendment due process right by authorizing a new mandatory minimum prison sentence for a supervised release violation based on a judge's fact-finding by a preponderance of the evidence. 139 S. Ct. at 2369. And, in *Davis*, the Court held that the residual clause of § 924(c), found at 18 U.S.C. § 924(c)(3)(B), is unconstitutionally vague. 139 S. Ct. at 2323-2324. Neither case dealt with sentencing or purported to overrule the principle that a sentencing court can consider conduct of a defendant of which he has been acquitted or, as in this case, conduct that is unadjudicated. *See United States v. Watts*, 519 U.S. 148, 156 (1997) (court can consider acquitted conduct for sentencing purposes).[2] Moreover, even if Bays could show that the district court erroneously relied on Section 2N2.1's cross reference and that the Fifth Circuit would have been receptive to that argument, there are other reasons to believe that the Fifth Circuit would have nevertheless upheld the sentence.

Importantly, the Section 2N2.1 guideline calculation was an alternative to the guideline calculation under Section 2B1.1 that the Fifth Circuit did not reach on direct appeal. So in addition to demonstrating that the objections to Section 2N2.1's cross-reference would have had a reasonable probability of success, Bays also must show that the appellate court would have found persuasive an argument that the guideline calculations under Section 2B1.1 were likewise erroneous. Bays' briefing here contains no argument on that issue. Thus, he fails in his burden

---

[2] Bays references a <u>proposed</u> amendment Section 1B1.3 of the Sentencing Guidelines, Doc. 26 at 8, is of no moment since such amendment was never enacted. *See* USSG § 1B1.3. Likewise, Bays' argument in reliance on *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023), that his conspiracy offense was not in furtherance of a controlled substances offense, Doc. 26 at 7, is misplaced since *Dupree* involved the definition of "controlled substance offense" for purposes of the career offender sentencing enhancement under USSG § 4B1.2(b), *Id.* at 1271, and has no bearing on whether Section 2N2.1's cross-reference can apply to Bays.

to show a reasonable probability that the Fifth Circuit would have accepted the no-actual-or-intended-loss argument <u>and</u> found that this Court erred in using Section 2B1.1 as one of its alternative methods for calculating the sentence. As such, Bays cannot demonstrate prejudice in relation to the Court's alternative application of Section 2N2.1.

Finally, the Court emphasized that it would have issued the same statutory-maximum sentence under the Section 3553 factors even if the guidelines analysis was incorrect. Crim. Doc. 668 at 92. Bays fails to show any prejudice from his appellate counsel's failure to argue the Section 2N2.1 issue for this reason as well, as his sentence would have been the same even if the guideline range were incorrect. *See, e.g.*, *Deonarinesingh v. United States*, 542 F. App'x 857, 862 (5th Cir. 2013) (per curiam) ("The [sentencing] guideline error is harmless if the district court unambiguously expressed that it would have imposed the same sentence, even without the erroneous calculation.") (citing *United States v. Barne*, 572 F.3d 1239, 1247 (11th Cir. 2009)); *United States v. Dalton*, 433 F. App'x 164, 167 (4th Cir. 2011) (per curiam) ("Even if there was error, we conclude the error would be harmless in light of the fact that the district court justified the sentence by reference to the 18 U.S.C. § 3553(a) sentencing factors.").

In short, Bays fails to show that his counsel was ineffective for not challenging Section 2N2.1's cross-reference or that he was prejudiced by any ineffectiveness.

### 2. Failure to Challenge Application of the Section 3553(a) Factors

Bays also claims that his appellate counsel should have challenged this Court's application of the Section 3553(a) sentencing factors in imposing a statutory maximum sentence. Again, Bays fails to show ineffectiveness or prejudice.

"To determine whether a sentence is substantively reasonable, a district court should consider 'the totality of the circumstances, including the extent of any variance from the

Guidelines range.'" *United States v. Hudgens*, 4 F.4th 352, 358 (5th Cir. 2021) (citation

omitted).  "A non-Guideline sentence unreasonably fails to reflect the statutory sentencing

factors [set forth in § 3553(a)] where it (1) does not account for a factor that should have

received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3)

represents a clear error of judgment in balancing the sentencing factors." *United States v. Smith*,

*440 F.3d 704, 708 (5th Cir. 2006)*.  The appellate court's "review for substantive reasonableness

is 'highly deferential,' because the sentencing court is in a better position to find facts and judge

their import under the § 3553(a) factors with respect to a particular defendant." *United States v.*

*Diehl*, *775 F.3d 714, 724 (5th Cir. 2015)*.

  The Court explained in detail how the Section 3553(a) sentencing factors supported the

sentence:

> Mr. Bays, in determining the sentence, I've considered the advisory guideline
> range, as well as the statutory factors considered in 3553(a)—that's all of them, I'm
> not leaving any out—but safety of the community, you know, promote respect for
> law enforcement and all of them.  And the sentence will be sufficient but not greater
> than necessary to achieve the Court's sentencing objectives of punishment,
> deterrence, protection of the public.  Even if the guideline calculations are not
> correct, this is the sentence that the Court would otherwise impose under 3553.
>
> Okay.  Mr. Bays, I still have not seen really any remorse from you.  You know, I'm
> looking for it, I haven't seen it.  And I think I already told you at the last sentencing
> that—just a minute—that your criminal history, the widespread nature of this
> offense, widespread nature, the dangerousness of the substance involved—we
> could get into hours of that, but they are so dangerous to people and to kids really.
> And all these, I think the examples that were given to us during the trial, all add up
> to how dangerous it is.  Because it seems like these people that get on it go crazy a
> little bit as opposed to, you know, some of the other drugs.  And deterrence.  I think
> that the 3553 factors all add up to a 300-month sentence.

Crim. Doc. 668 at 89.

  Bays does not persuasively argue how his counsel could have challenged that analysis.

He only suggests that a sentence of 120 months would be "more in line with a reasonable and

just punishment for convictions of the white-collar, non-violent offender under Count one and Count Two." Doc. 12 at 19. But Bays' mere disagreement with how the Court weighed the sentencing factors does not establish error, much less reversible error. *See*, *e.g.*, *United States v. Bonilla-Ponce*, 470 F. App'x 408, 409 (5th Cir. 2012) (per curiam) ("As for his suggestion that his state and immigration detentions should have operated to reduce his sentence and his argument that the district court overstated the seriousness of the offense, these complaints amount to a mere disagreement with the weight the district court gave to the various sentencing factors and thus are insufficient to warrant reversal.") (citing *Gall*, 552 U.S. at 51); *see also United States v. York*, 600 F.3d 347, 361-62 (5th Cir. 2010).

Because Bays cannot show any error in the Court's application of the sentencing factors, he cannot show that his appellate counsel was ineffective for not arguing that this Court erred in applying them. Nor can he show a reasonable probability that the Fifth Circuit, under an abuse of discretion standard, would have accepted such an argument and reversed his sentence. *See*, *e.g.*, *Munoz v. United States*, No. 1:16-CV-352, 2019 WL 5887086, at *1 (E.D. Tex. Nov. 12, 2019) ("Counsel does not perform deficiently by failing to pursue an argument that has no validity or hope of success.") (citing *United States v. Gaudet*, 81 F.3d 585, 591 (5th Cir. 1996)).

### B. Defective Indictment

Bays claims that his Sixth Amendment rights were violated by a "duplicitous indictment and improper jury instructions." Doc. 12 at 11. He alleges that the indictment "lists two separate and distinct crimes that cannot be read as a single count," and therefore allowed the jury to render a non-unanimous verdict. Doc. 12 at 11-14. Bays procedurally defaulted this claim.

"A defendant can challenge his conviction after it is presumed final only on issues of constitutional magnitude and may not raise an issue for the first time on collateral review without

showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."

*United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  Bays did not raise the duplicitous

indictment issue in any of his direct appeals.  *See* Appellant's Brief and Reply Brief,  *Bays*, 846

F. App'x 285 (No. 20-10196); Appellant's Brief and Reply Brief,  *Bays*, 765 F. App'x 945 (No.

17-10920); Appellant's Brief and Reply Brief,  *Bays*, 680 F. App'x 303 (No. 15-10385).

      Further, Bays does not argue that cause excuses the procedural default or that he has been

prejudiced because of the alleged Sixth Amendment violation.  Doc. 26 at 2-3.  He instead argues

that the Court should review his claims under a "plain error" standard  Doc. 26 at 2.  He is incorrect,

as "plain error" is not the appropriate standard of review for procedurally defaulted claims on

collateral review.  *United States v. Fray*, 456 U.S. 152, 166-67 (1982) (citations omitted).  The

movant must show cause and actual prejudice to excuse a procedural default.  *See id.*  Because

Bays fails to do so, his Sixth Amendment duplicitous indictment claim should be denied.  *See*, *e.g.*,

*United States v. Samuels*, No. 09-123, 2017 WL 2402580, at *2 (E.D. La. June 2, 2017)

(confirming that the movant procedurally defaulted his claim that the indictment was duplicitous

because he did not raise that claim on direct appeal).

### C. Deprivation of Complete Defense

      As noted previously, the jury charge omitted instructions tasking the Government with

proving that Bays knew that the substances at issue were "controlled substances," which the Fifth

Circuit later found invalidated the drug offense convictions.  *Bays*, 680 F. App'x at 309.  Bays

now argues that excluding the mens rea instruction also hampered his right to present a complete

defense in relation his other convictions.  Doc. 12 at 15.

      But Bays procedurally defaulted this claim, too.  He failed to raise it in any of the three

prior appeals.  *See* Appellant's Brief and Reply Brief,  *Bays*, 846 F. App'x 285 (No. 20-10196);

Appellant's Brief and Reply Brief, *Bays*, 765 F. App'x 945 (No. 17-10920); Appellant's Brief and Reply Brief, *Bays*, 680 F. App'x 303 (No. 15-10385). And he fails to show cause and prejudice here to excuse the procedural default. Because this claim is procedurally defaulted, it should be denied.

### D. Excessive Sentence

Bays argues that the Court imposed an excessive and unreasonable sentence. Doc. 12 at 17. But a movant can only collaterally challenge his conviction on constitutional or jurisdictional grounds under Section 2255. *See*, *e.g.*, *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)). A movant's disagreement with the trial court's application of the sentencing guidelines or the Section 3553 factors does not warrant relief under Section 2255. *See*, *e.g.*, *Eastman v. United States*, Civil Action No. W-10-CA-00256, 2011 WL 13201786, at *1 (W.D. Tex. Apr. 12, 2011) ("In this case, Eastman's claim does not meet the established standards of collateral attack under § 2255. Her sole complaint is that her sentence was excessive in light of her cooperation with law enforcement and her co-defendant's sentence. However, as long as the sentence imposed was within the statutory limits, errors in calculating the sentence are not grounds for relief under § 2255. Application of the sentencing guidelines does not implicate any constitutional or jurisdictional issue, and misapplication would not give rise to a complete miscarriage of justice if left uncorrected. Therefore, Eastman cannot challenge the severity of her sentence under § 2255.") (citing *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Patterson*, 739 F.2d 191, 196 (5th Cir. 1984)).

Thus, Bays' claim that his sentence is excessive and unreasonable is not cognizable in this Section 2255 proceeding and should be denied.

### E. Evidentiary Hearing

In his reply, Bays requests an evidentiary hearing. Doc. 26 at 5. But "[w]hen the files and records of a case make manifest the lack of merit of a section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981). Accordingly, because Bays' claims lack merit for the reasons stated above, he is not entitled to an evidentiary hearing.

### III. CONCLUSION

Bays' Section 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on December 20, 2023.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).